## U.S. Bankruptcy Court

### Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 3/6/2023 at 4:09 PM EST

File another claim

| | |
|---|---|
| **Case Name:** | Patricia A. Morris |
| **Case Number:** | 23-10399-mdc |
| **Creditor Name:** | Rocket Mortgage, LLC f/k/a Quicken Loans, at. el<br>635 Woodward Avenue<br>Detroit MI 48226 |
| **Claim Number:** | 2    Claims Register |
| **Amount Claimed:** | $208,982.24 |
| **Amount Secured:** | $208982.24 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC- Morris.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/6/2023] [FileNumber=31177568-0
] [a13e17504aa2407cd76f533bf6cac28f3c9881f8b4e4a7c025230693769aeffcf9e
cb4a3f2f446d03bcfc5c40b94d0a851f932b1ad1b19f3ef44f3cfb4cf0bcd]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410a- Morris.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/6/2023] [FileNumber=31177568-1
] [137771786ff9ccf406fd50cff72447ce41c60874d3779e9ef6a6e48312b258371a7
3c5ea64bd2cd498d0fa7e917a41e1b23e5ebb373fb9dadbc53b120f891c92]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\Escrow Analysis- Morris.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/6/2023] [FileNumber=31177568-2
] [6820352e79a46dff2b63109b983e3db8bed3e0f617e2b61bb6a317d577f135a42cf
7275af03221bfb6c0224145082c884c0dff3d33656d6390a2456be36dc291]]
**Document description:**Exhibit Loan Documents

**Original filename:** C:\fakepath\Loan Documents- Morris.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/6/2023] [FileNumber=31177568-3
] [3658a7ce96dfe59d655e43e727a4a0e6ef054e9ed71a0e40d34cf6f3331ff05806e
3e66575e3df368d49bdc267169a75254508f2c0c52cdbe2205563a6df99bb]]

**23-10399-mdc Notice will be electronically mailed to:**

ANDRE DOVER on behalf of Debtor Patricia A. Morris
kashlaw@aol.com, doverar87647@notify.bestcase.com

MICHAEL PATRICK FARRINGTON on behalf of Creditor Rocket Mortgage, LLC f/k/a Quicken Loans, LLC
mfarrington@kmllawgroup.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**23-10399-mdc Notice will not be electronically mailed to:**

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | PATRICIA A MORRIS |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern   District of   Pennsylvania<br>(State) |
| Case number | 23-10399 MDC |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

The law requires that filers **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.
Name of the current creditor (the person or entity to be paid for this claim)

_____
Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.<br>Name | _____<br>Name |
| 635 Woodward Avenue<br>Number        Street | _____<br>Number        Street |
| Detroit              MI            48226<br>City           State          ZIP Code | _____<br>City           State          ZIP Code |
| Contact phone  1-800-508-0944 | Contact phone  _____ |
| Contact email  bankruptcyquestions@rocketmortgage.com | Contact email  _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __7__ __2__ __7__ __4__ |

7. **How much is the claim?**   $ 208,982.24 _____. **For leases state only the amount of default.**

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**   RECORDED MORTGAGE
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____
**Amount of the claim that is secured:**   $ 208,982.24
**Amount of the claim that is unsecured:**   $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 1,911.19 _____

**Annual Interest Rate** (when case was filed) ___4.500___ %
☑ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

11. **Does this claim involve a right to setoff?**

☑ No
☐ Yes. Explain: _____

| | | Amount entitled to priority |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** <br><br> A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No <br> ☐ Yes. Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    03/06/2023
                    MM / DD / YYYY

/s/ Brian C. Nicholas, Equire
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Brian C. Nicholas | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Bankruptcy Attorney | | |
| Company | KML Law Group, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 701 Market Street, Suite 5000 | | |
| | Number    Street | | |
| | Philadelphia | PA | 19106 |
| | City | State | ZIP Code |
| Contact phone | 201-549-5366 | Email | bnicholas@kmllawgroup.com |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA A MORRIS | CHAPTER 13 |
| Debtor(s) | NO. 23-10399 MDC |

CERTIFICATE OF SERVICE

      I, the undersigned, attorney for Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>March 06, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Andre Dover
10 Canal Street Suite 204
Kashkashian & Associates
Bristol, PA 19007

***Bankruptcy Trustee***
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>March 06, 2023</u>

                           <u>**/s/Brian C. Nicholas Esquire**</u>
                           Brian C. Nicholas Esquire
                           Attorney I.D. 317240
                           KML Law Group, P.C.
                           BNY Mellon Independence Center
                           701 Market Street, Suite 5000
                           Philadelphia, PA 19106
                           201-549-5366
                           bnicholas@kmllawgroup.com

# Mortgage Proof of Claim Attachment

**(12/15)**

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 23-10399 MDC | Principal balance: 209,869.82 | Principal & interest due: 1,144.27 | Principal & interest: 1,144.27 |
| Debtor 1: PATRICIA A MORRIS | Interest due: 1,019.88 | Prepetition fees due: 91.54 | Monthly escrow: 524.49 |
| Debtor 2: | Fees, costs due: 91.54 | Escrow deficiency for funds advanced: 0.00 | Private mortgage insurance: 147.93 |
| | Escrow deficiency for funds advanced: 0.00 | Projected escrow shortage: 675.38 | |
| Last 4 digits to identify: 7 2 7 4 | Pro Rata MIP/PMI: 144.97 | Less funds on hand: - 0.00 | Total monthly payment: 1,816.69 |
| Creditor: Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | Less total funds on hand: – 2,143.97 | Total prepetition arrearage: 1,911.19 | |
| Servicer: Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. | Total debt: 208,982.24 | | |

Fixed accrual/daily simple interest/other: **Fixed Accrual**

## Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 01/17/2022 | | | 45.77 | LATE FEES | | 9,160.53 | | | | 45.77 | | | | | 45.77 | |
| 01/18/2022 | | 1,849.26 | | Payment Received | 01/01/2022 | 7,311.27 | 340.29 | 803.98 | 704.99 | | | 221,442.17 | | 2,410.42 | 45.77 | 0.00 |
| 01/18/2022 | | | | Payment Received | 01/01/2022 | 7,311.27 | | | | | | 221,442.17 | | 2,410.42 | 45.77 | 0.00 |
| 02/01/2022 | 1,849.26 | | | Payment Due | 02/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 02/04/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 221,442.17 | | 2,262.49 | 45.77 | 0.00 |
| 02/14/2022 | | 1,849.26 | | Payment Received | 02/01/2022 | 7,311.27 | 341.57 | 802.70 | 704.99 | | | 221,100.60 | | 2,967.48 | 45.77 | 0.00 |
| 02/14/2022 | | | | Payment Received | 02/01/2022 | 7,311.27 | | | | | | 221,100.60 | | 2,967.48 | 45.77 | |
| 03/01/2022 | 1,849.26 | | | Payment Due | 03/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 03/04/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 221,100.60 | | 2,819.55 | 45.77 | |
| 03/14/2022 | | 1,849.26 | | Payment Received | 03/01/2022 | 7,311.27 | 342.85 | 801.42 | 704.99 | | | 220,757.75 | | 3,524.54 | 45.77 | |
| 03/14/2022 | | | | Payment Received | 03/01/2022 | 7,311.27 | | | | | | 220,757.75 | | 3,524.54 | 45.77 | |
| 03/31/2022 | | | 1,118.58 | Lien/Tax Authority Disbursements | 04/01/2022 | 7,311.27 | | | -1,118.58 | | | 220,757.75 | | 2,405.96 | 45.77 | 0.00 |
| 04/01/2022 | 1,849.26 | | | Payment Due | 04/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 04/04/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 220,757.75 | | 2,258.03 | 45.77 | 0.00 |

**Mortgage Proof of Claim Attachment**

Case number: 23-10399

Debtor 1: PATRICIA A MORRIS

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 04/15/2022 | | 1,849.26 | | Payment Received | 04/01/2022 | 7,311.27 | 344.13 | 800.14 | 704.99 | | | 220,413.62 | | 2,963.02 | 45.77 | 0.00 |
| 04/15/2022 | | | | Payment Received | 04/01/2022 | 7,311.27 | | | | | | 220,413.62 | | 2,963.02 | 45.77 | 0.00 |
| 05/01/2022 | 1,849.26 | | | Payment Due | 05/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 05/05/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 220,413.62 | | 2,815.09 | 45.77 | |
| 05/16/2022 | | 1,849.26 | | Payment Received | 05/01/2022 | 7,311.27 | 345.42 | 798.85 | 704.99 | | | 220,068.20 | | 3,520.08 | 45.77 | 0.00 |
| 05/16/2022 | | | | Payment Received | 05/01/2022 | 7,311.27 | | | | | | 220,068.20 | | 3,520.08 | 45.77 | 0.00 |
| 06/01/2022 | 1,849.26 | | | Payment Due | 06/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 06/03/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 220,068.20 | | 3,372.15 | 45.77 | 0.00 |
| 06/14/2022 | | 1,849.26 | | Payment Received | 06/01/2022 | 7,311.27 | 346.72 | 797.55 | 704.99 | | | 219,721.48 | | 4,077.14 | 45.77 | 0.00 |
| 06/14/2022 | | | | Payment Received | 06/01/2022 | 7,311.27 | | | | | | 219,721.48 | | 4,077.14 | 45.77 | 0.00 |
| 07/01/2022 | 1,849.26 | | | Payment Due | 07/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 07/04/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 219,721.48 | | 3,929.21 | 45.77 | 0.00 |
| 07/15/2022 | | 1,849.26 | | Payment Received | 07/01/2022 | 7,311.27 | 348.02 | 796.25 | 704.99 | | | 219,373.46 | | 4,634.20 | 45.77 | 0.00 |
| 07/15/2022 | | | | Payment Received | 07/01/2022 | 7,311.27 | | | | | | 219,373.46 | | 4,634.20 | 45.77 | 0.00 |
| 08/01/2022 | 1,849.26 | | | Payment Due | 08/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 08/02/2022 | | | 3,804.67 | Lien/Tax Authority Disbursements | 08/01/2022 | 9,160.53 | | | -3,804.67 | | | 219,373.46 | | 829.53 | 45.77 | 0.00 |
| 08/05/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 219,373.46 | | 681.60 | 45.77 | 0.00 |
| 08/15/2022 | | 1,849.26 | | Payment Received | 08/01/2022 | 7,311.27 | 349.32 | 794.95 | 704.99 | | | 219,024.14 | | 1,386.59 | 45.77 | 0.00 |
| 08/15/2022 | | | | Payment Received | 08/01/2022 | 7,311.27 | | | | | | 219,024.14 | | 1,386.59 | 45.77 | 0.00 |
| 09/01/2022 | 1,849.26 | | | Payment Due | 09/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |

Case number: 23-10399

Debtor 1: PATRICIA A MORRIS

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 09/03/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 219,024.14 | | 1,238.66 | 45.77 | 0.00 |
| 09/16/2022 | | | 45.77 | LATE FEES | | 9,160.53 | | | | 45.77 | | | | | 91.54 | |
| 09/21/2022 | | 45.77 | | LATE FEES | | 9,160.53 | | | | -45.77 | | | | | 45.77 | |
| 09/21/2022 | | 1,849.26 | | Payment Received | 09/01/2022 | 7,311.27 | 350.63 | 793.64 | 704.99 | | | 218,673.51 | | 1,943.65 | 45.77 | 0.00 |
| 09/21/2022 | | | | Payment Received | 09/01/2022 | 7,311.27 | | | | | | 218,673.51 | | 1,943.65 | 45.77 | 0.00 |
| 09/22/2022 | | 1,849.26 | | Payment Received | 10/01/2022 | 5,462.01 | 351.95 | 792.32 | 704.99 | | | 218,321.56 | | 2,648.64 | 45.77 | 0.00 |
| 09/22/2022 | | | | Payment Received | 10/01/2022 | 5,462.01 | | | | | | 218,321.56 | | 2,648.64 | 45.77 | 0.00 |
| 10/01/2022 | 1,849.26 | | | Payment Due | 10/01/2022 | 7,311.27 | | | | | | | | | 45.77 | |
| 10/04/2022 | | | | NSF Application Reversal | 11/01/2022 | 7,311.27 | | | | | | 218,321.56 | | 2,648.64 | 45.77 | 0.00 |
| 10/04/2022 | | | 1,849.26 | NSF Application Reversal | 10/01/2022 | 9,160.53 | -351.95 | -792.32 | -704.99 | | | 218,673.51 | | 1,943.65 | 45.77 | 0.00 |
| 10/05/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 218,673.51 | | 1,795.72 | 45.77 | 0.00 |
| 10/13/2022 | | | 420.69 | Disbursement to Mortgagor | | 9,160.53 | | | -420.69 | | | 218,673.51 | | 1,375.03 | 45.77 | 0.00 |
| 10/14/2022 | | 1,849.26 | | Payment Received | 10/01/2022 | 7,311.27 | 351.95 | 792.32 | 704.99 | | | 218,321.56 | | 2,080.02 | 45.77 | 0.00 |
| 10/14/2022 | | | | Payment Received | 10/01/2022 | 7,311.27 | | | | | | 218,321.56 | | 2,080.02 | 45.77 | 0.00 |
| 10/31/2022 | | | 1,406.00 | Hazard Insurance Disbursements | 11/01/2023 | 7,311.27 | | | -1,406.00 | | | 218,321.56 | | 674.02 | 45.77 | 0.00 |
| 11/01/2022 | 1,849.26 | | | Payment Due | 11/01/2022 | 9,160.53 | | | | | | | | | 45.77 | |
| 11/04/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,160.53 | | | -147.93 | | | 218,321.56 | | 526.09 | 45.77 | 0.00 |
| 11/15/2022 | | 1,849.26 | | Payment Received | 11/01/2022 | 7,311.27 | 353.27 | 791.00 | 704.99 | | | 217,968.29 | | 1,231.08 | 45.77 | 0.00 |
| 11/15/2022 | | | | Payment Received | 11/01/2022 | 7,311.27 | | | | | | 217,968.29 | | 1,231.08 | 45.77 | 0.00 |
| 12/01/2022 | 1,819.65 | | | Payment Due | 12/01/2022 | 9,130.92 | | | | | | | | | 45.77 | |

Case number: 23-10399

Debtor 1: PATRICIA A MORRIS

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 12/03/2022 | | | 147.93 | MI or PMI Disbursement | 12/01/2022 | 9,130.92 | | | -147.93 | | | 217,968.29 | | 1,083.15 | 45.77 | 0.00 |
| 12/15/2022 | | 1,819.65 | | Payment Received | 12/01/2022 | 7,311.27 | 354.59 | 789.68 | 675.38 | | | 217,613.70 | | 1,758.53 | 45.77 | 0.00 |
| 12/15/2022 | | | | Payment Received | 12/01/2022 | 7,311.27 | | | | | | 217,613.70 | | 1,758.53 | 45.77 | 0.00 |
| 01/01/2023 | 1,819.65 | | | Payment Due | 01/01/2023 | 9,130.92 | | | | | | | | | 45.77 | |
| 01/05/2023 | | | 144.97 | MI or PMI Disbursement | 12/01/2023 | 9,130.92 | | | -144.97 | | | 217,613.70 | | 1,613.56 | 45.77 | 0.00 |
| 01/16/2023 | | | 45.77 | LATE FEES | | 9,130.92 | | | | 45.77 | | | | | 91.54 | |
| 01/25/2023 | | 1,819.65 | | Payment Received | 12/01/2023 | 7,311.27 | 355.92 | 788.35 | 675.38 | | | 217,257.78 | | 2,288.94 | 91.54 | 0.00 |
| 01/25/2023 | | | | Payment Received | 01/01/2023 | 7,311.27 | | | | | | 217,257.78 | | 2,288.94 | 91.54 | 0.00 |
| 02/01/2023 | 1,819.65 | | | Payment Due | 02/01/2023 | 9,130.92 | | | | | | | | | 91.54 | |
| 02/03/2023 | | | 144.97 | MI or PMI Disbursement | 12/01/2023 | 9,130.92 | | | -144.97 | | | 217,257.78 | | 2,143.97 | 91.54 | 0.00 |

# ROCKET Mortgage

## Annual Escrow Account Disclosure Statement

1050 Woodward Avenue | Detroit, MI 48226

PATRICIA A MORRIS
PIETRO G GIGLIOTTI JR
2973 CAMBORNE CT
BENSALEM PA 19020-2264

## Loan Information

| | |
|---|---|
| **Loan Number:** | |
| **Property Address:** | 2973 Camborne CT |
| | Bensalem, PA 19020 |
| **Statement Date:** | 02/14/2023 |
| **New Payment Effective Date:** | 03/01/2023 |

## 1. Your Escrow Account Items

To take a closer look at your numbers, sign in to Rocket Mortgage® and click on the Loan Information tab.

### Annual Escrow Account Breakdown

| Activity | Estimated Amount* | Actual Amount | Next Due |
|---|---|---|---|
| School Taxes | $3,804.67 | $3,804.67 | 08/2023 |
| Township Taxes | $1,118.58 | $1,118.58 | 04/2023 |
| Mortgage Insurance | $1,775.16 | $1,739.64 | 03/2023 |
| Homeowners Insurance | $1,406.00 | $1,406.00 | 11/2023 |
| **Totals:** | **$8,104.41** | **$8,068.89** | |

*The estimated amounts are based on an amount provided previously or the amount last disbursed.

## 2. Your Escrow Account Has An Overage

Great news - you're getting a refund. Please note that your payment may still be changing. Your check is attached, or if it couldn't be attached, it's being sent to you separately.

### Projected Escrow Account Balance

| | |
|---|---|
| Projected Minimum Balance: | $1,060.80 |
| Required Minimum Balance: | $1,054.88 |
| **Overage Amount:** | **$5.92** |

Note: This amount has been adjusted to account for the bankruptcy proof of claim.

## 3. Your Payment Is Changing

Your escrow payment is decreasing.

### Breaking Down The Numbers

| | Current | New |
|---|---|---|
| Principal & Interest: | $1,144.27 | $1,144.27 |
| Escrow Payment: | $675.38 | $672.42 |
| **Monthly Payment:** | **$1,819.65** | **$1,816.69** |

Please note that the current payment amount listed above is the payment amount that the loan is due for under the terms of the security instrument. This may differ from the payment amount under the terms of the bankruptcy plan.



**Mortgage Payment Breakdown**

Current Payment / New Payment

■ Principal & Interest    ■ Escrow Payment

## Quick And Easy Payment Options

**RO**CKET **Mortgage**

**Annual Escrow Account
Disclosure Statement**

1050 Woodward Avenue | Detroit, MI 48226

## 4. A Closer Look At Your Escrow Account History

**Total Insurance Payments**



This chart highlights the differences between the estimated and actual payment amounts for the insurance and shows the reason for the current overage.

The actual amounts paid out for insurance over the past year, as shown here, are used as the basis for our projections for the upcoming 12 months.

The table below details the activity history for your escrow account from last year. The differences in your insurance payment amounts are highlighted in yellow.

### Escrow Account Activity History For December 2022 To February 2023

| Date | Activity | Payments | | Disbursements | | Balance | |
|------|----------|----------|--------|---------------|--------|---------|--------|
| | | Estimated | Actual | Estimated | Actual | Estimated | Actual |
| 12/2022 | Beginning Balance | | | | | $1,231.08 | $1,231.08 |
| 12/2022 | Deposit | $675.38 | $675.38 | $0.00 | $0.00 | $1,906.46 | $1,906.46 |
| 12/2022 | Withdrawal – MORTGAGE INS | $0.00 | $0.00 | $147.93 | $147.93 | $1,758.53 | $1,758.53 |
| 01/2023 | Deposit | $675.38 | $675.38 | $0.00 | $0.00 | $2,433.91 | $2,433.91 |
| 01/2023 | Withdrawal – MORTGAGE INS | $0.00 | $0.00 | $147.93 | $144.97 | $2,285.98 | $2,288.94 |
| 02/2023 | Deposit | $675.38 | $675.38 | $0.00 | $0.00 | $2,961.36 | $2,964.32 ** |
| 02/2023 | Withdrawal – MORTGAGE INS | $0.00 | $0.00 | $147.93 | $144.97 | $2,813.43 | $2,819.35 |
| | **Totals** | **$2,026.14** | **$2,026.14** | **$443.79** | **$437.87** | | |

** This amount is a projection as of the date of this analysis. It has not been received or remitted at this time.

## ROCKET Mortgage

1050 Woodward Avenue | Detroit, MI 48226

**Annual Escrow Account
Disclosure Statement**

## 5. A Closer Look At Projections For Your Escrow Account

### Escrow Account Projection

| Description | Annual Amount |
|---|---|
| MORTGAGE INS: | $1,739.64 |
| TOWNSHIP TAXES: | $1,118.58 |
| SCHOOL TAXES: | $3,804.67 |
| HOMEOWNERS INS: | $1,406.00 |
| **Total Annual Taxes And Insurance:** | **$8,068.89** |
| **New Monthly Escrow Payment:** | **$672.42** |

The table below details the projected activity for your escrow account. The minimum required balance, highlighted in yellow, is determined by the Real Estate Settlement Procedures Act (RESPA), your mortgage contract or state law. Your account's selected minimum allowed balance or cushion is $1,054.88. Your minimum required balance may include up to two months of escrow payments to cover increases in your taxes and insurance.

The actual amounts paid out for taxes and insurance, as shown in the Escrow Account Activity History Table, are used as the basis for our projections for the upcoming year.

### Future Escrow Account Activity For March 2023 To February 2024

| Date | Activity | Payments Estimated | Disbursements Estimated | Balance Estimated | Balance Required |
|---|---|---|---|---|---|
| 03/2023 | Beginning Balance | | | $2,819.35 | $2,813.43 |
| 03/2023 | Deposit | $672.42 | $0.00 | $3,491.77 | $3,485.85 |
| 03/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $3,346.80 | $3,340.88 |
| 04/2023 | Deposit | $672.42 | $0.00 | $4,019.22 | $4,013.30 |
| 04/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $3,874.25 | $3,868.33 |
| 04/2023 | Withdrawal – TOWNSHIP TAXES | $0.00 | $1,118.58 | $2,755.67 | $2,749.75 |
| 05/2023 | Deposit | $672.42 | $0.00 | $3,428.09 | $3,422.17 |
| 05/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $3,283.12 | $3,277.20 |
| 06/2023 | Deposit | $672.42 | $0.00 | $3,955.54 | $3,949.62 |
| 06/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $3,810.57 | $3,804.65 |
| 07/2023 | Deposit | $672.42 | $0.00 | $4,482.99 | $4,477.07 |
| 07/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $4,338.02 | $4,332.10 |
| 08/2023 | Deposit | $672.42 | $0.00 | $5,010.44 | $5,004.52 |
| 08/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $4,865.47 | $4,859.55 |
| 08/2023 | Withdrawal – SCHOOL TAXES | $0.00 | $3,804.67 | $1,060.80 | $1,054.88 [L] |
| 09/2023 | Deposit | $672.42 | $0.00 | $1,733.22 | $1,727.30 |
| 09/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $1,588.25 | $1,582.33 |
| 10/2023 | Deposit | $672.42 | $0.00 | $2,260.67 | $2,254.75 |
| 10/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $2,115.70 | $2,109.78 |
| 11/2023 | Deposit | $672.42 | $0.00 | $2,788.12 | $2,782.20 |
| 11/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $2,643.15 | $2,637.23 |
| 11/2023 | Withdrawal – HOMEOWNERS INS | $0.00 | $1,406.00 | $1,237.15 | $1,231.23 |

**ROCKET Mortgage**

1050 Woodward Avenue | Detroit, MI 48226

# Annual Escrow Account
# Disclosure Statement

## Future Escrow Account Activity For March 2023 To February 2024 Continued

| | | Payments | Disbursements | Balance | |
| --- | --- | --- | --- | --- | --- |
| Date | Activity | Estimated | Estimated | Estimated | Required |
| 12/2023 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $1,764.60 | $1,758.68 |
| 01/2024 | Deposit | $672.42 | $0.00 | $2,437.02 | $2,431.10 |
| 01/2024 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $2,292.05 | $2,286.13 |
| 02/2024 | Deposit | $672.42 | $0.00 | $2,964.47 | $2,958.55 |
| 02/2024 | Withdrawal – MORTGAGE INS | $0.00 | $144.97 | $2,819.50 | $2,813.58 |
| | **Totals** | **$8,069.04** | **$8,068.89** | | |

ᴸThis amount denotes the projected low point balance.

THIS SPACE INTENTIONALLY LEFT BLANK



# Note

November 29, 2018                    Bensalem
*(Date)*                              *(City)*                              *(State)*

2973 Camborne Ct
Bensalem, PA 19020-2264
*(Property Address)*

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $ 225,834.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Quicken Loans Inc.

   I will make all payments under this Note in the form of cash, check or money order.

   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   4.500%.

   The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

3. **PAYMENTS**

   **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

   I will make my monthly payment on the 1st day of each month beginning on   January 1, 2019 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on December 1, 2048 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

   I will make my monthly payments at P.O. Box 6577, Carol Stream, IL   60197
   or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $1,144.27 .

4. **BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the ___ of the Note. If I ___ partial P___ amount of my ___ nless the Note

5. **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest.

   I will pay this late charge promptly but only once on each late payment.

   (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FHA Fixed Rate Note-Pennsylvania
Bankers Systems℠ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(PA) (1603).00
Page 2 of 3

**10. UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS.** For purposes of this Note, "Survival Event" is defined as follows:

(A) any default described in Section 6(B) of this Note;

(B) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(C) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(D) the Maturity Date as defined in this Note;

(E) the entry of any judgment against me under this Note; and

(F) the entry of any judgment under the Security Instrument.

This is a contract under seal and may be enforced under 42 PA. C.S. Section 5529(b).

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 11/29/2018 _(Seal)_    _____ 11/29/2018 _(Seal)_
Patricia A. Morris          -Borrower    Pietro G Gigliotti, Jr.          -Borrower

_____ _(Seal)_    _____ _(Seal)_
                            -Borrower                            -Borrower

_(Sign Original Only)_

☐ Refer to the attached _Signature Addendum_ for additional parties and signatures.

████████████████████ Loans Inc.

WITHOUT RECOURSE
Pay to the Order of

Quicken Loans Inc.

By:
Michelle Butts
Capture Manager

FHA Fixed Rate Note-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R(PA) (1803).00
Page 3 of 3



CERTIFIED TRUE AND CORRECT COPY OF THE ORIGINAL

Quicken Loans Inc.
Marci L Falconer
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

**Return To:**
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI   48226-1906

**Premises:**
2973 Camborne Ct
Bensalem, PA 19020-2264

Mortgage

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 21 and 27. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated   November 29, 2018, together with all Riders to this document.

**(B)** **"Borrower"**is Patricia A. Morris and Pietro G Gigliotti, Jr., wife and husband

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"**is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D)** **"Lender"**is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of          the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI  48226-1906

**(E)** **"Note"**means the promissory note signed by Borrower and dated November 29, 2018 . The Note states that Borrower owes Lender Two Hundred Twenty Five Thousand Eight Hundred Thirty Four and 00/100
Dollars (U.S. $ 225,834.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  December 1, 2048 .

**(F)** **"Property"**means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FHA Mortgage With MERS-Penn
Bankers Systems™ VMP ®
Wolters Kluwer Financial Servic

9/30/2014
P4N(PA) (1712).00
Page 2 of 20

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider
☒ Other Legal Attached
☐ Rehabilitation Loan Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1712).00
Page 3 of 20

**(Q) "Secretary"**means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"**means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County                          of                          Bucks                          :
*(Type of Recording Jurisdiction)*                          *(Name of Recording Jurisdiction)*

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

which currently has the address of
2973 Camborne Ct                                                                 *(Street)*
          Bensalem                          *(City)*, Pennsylvania 19020-2264 *(Zip Code)*

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(PA) (1712).00
Page 4 of 20

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

   First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance sh

Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies, shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of

Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

    If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

    Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

   Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

FHA Mortgage With MERS-Pennsylvania
Bankers SystemsℱM  VMP ®
Wolters Kluwer Financial Services

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11.** **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12.** **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13.** **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems℠ VMP ®
Wolters Kluwer Financial Services

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow a

FHA Mortgage With MERS-P
Bankers System℠ VMP ®
Wolters Kluwer Financial Ser

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(A) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(B) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(C) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(D) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(E) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(F) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(G) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 3 of this Security Instrument;

(H) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(I) pay the fees required by Section 13 of this Security Instrument;

(J) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(K) pay any collection expenses under Section 22 of this Security Instrument; and

(L) pay interest at the rate payable from time to time under the Note.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

"Survival Event" means any of the following:

(A) any default described in the Note;

(B) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(C) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 22 of this Security Instrument;

(D) the Maturity Date as defined in the Note;

(E) the entry of any judgment against Borrower under the Note; and

(F) the entry of any judgment under this Security Instrument.

**28. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**29. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 11/29/2018 _____ *(Seal)*
Patricia A. Morris                            **-Borrower**


_____ 11/29/2018 _____ *(Seal)*
Pietro G Gigliotti, Jr.                        **-Borrower**


_____ *(Seal)*
                                                **-Borrower**


_____ *(Seal)*
                                                **-Borrower**


☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

FHA Mortgage With MERS-Pennsylvania
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

**Acknowledgment**
**State of** Pennsylvania
**County of** Bucks
This record was acknowledged before me on November 29, 2018 by
Patricia A. Morris and Pietro G Gigliotti,
Jr., wife and husband

*Notary Public*

*My commission expires:*

Commonwealth of Pennsylvania - Notary Seal
LISA A. McLEAN, Notary Public
Bucks County
My Commission Expires April 6, 2022
Commission Number 1222936

**Certificate of Residence**
I, Lisa A. McLean , do hereby certify that the correct address of the
within-named Lender is 1050 Woodward Ave., Detroit, MI 48226.

Witness my hand this 29 day of November 2018

*Agent of Lender*

# EXHIBIT A

ALL THAT CERTAIN piece or parcel of land, Situate in the Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania and described according to a Final Plan of Neshaminy Valley Village IV Portion, Sections 5, 6 and 7, revised made by Pickering, Corts and Summerson, Inc., Consulting Engineers and Surveyors, dated August 26, 1977, and last revised November 29, 1978, and recorded in and for the County of Bucks at Doylestown, Pennsylvania, in Plan Book 165, Page 15, described as follows, to wit:

BEGINNING at a point on the Southwesterly side of Wexford Road (60.00 feet wide) said point being 17.16 feet (erroneously stated as 17.15 feet in prior deed) measured from a point of curve on the Southeasterly side of Cambourne Court; thence extending from said point of beginning on the arc of a circle curving to the left having a radius of 357.76 feet the arc distance of 50.30 feet to a point of tangent; thence extending South 30 degrees, 37 minutes, 36 seconds East along the Southwesterly side of Cambourne Court 10.54 feet to a point of curve; thence extending on the arc of a circle curving to the right having a radius of 12.00 feet the arc distance of 17.74 feet to a point of reverse curve; thence extending Southwestwardly along the Northwesterly side of Springdale Drive (60.00 feet wide) on the arc of a circle curving to the left having a radius of 442.27 feet the arc distance of 133.63 feet to a point; thence extending North 04 degrees, 49 minutes, 10 seconds West 133.12 feet to a point on the Southerly side of Cambourne Court; thence extending on the arc of a circle curving to the left having a radius of 75.00 feet the arc distance of 26.95 feet to a point of tangent; thence extending North 59 degrees, 22 minutes, 24 seconds East along the Southeasterly side of Cambourne Court 40.34 feet to a point of curve; thence extending on the arc of a circle curving to the right having a radius of 12.00 feet the arc distance of 17.16 feet to the first mentioned point and place of beginning.

BEING Lot Number 116 as shown on the above mentioned Plan.

PARCEL NO.

BEING the same premises which Harold W. Schwarz and Lorraine E. Schwarz, his wife, Trustees of the Schwarz Trust, dated March 2, 1995, by Deed dated 12/19/2003 and recorded 12/29/2003 in the Office of the Recorder of Deeds in and for the County of Bucks in Land Record Book 3784, Page 152, granted and conveyed unto Cynthia A. Whyte.

**BUCKS COUNTY RECORDER OF DEEDS**

**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Instrument Number - 2023006570**
**Recorded On 2/17/2023 At 12:39:31 PM**          * Total Pages - 5
* Instrument Type - MORTGAGE ASSIGNMENT
   Invoice Number - ▇▇▇▇▇          User - ▇▇▇
* Mortgagor - QUICKEN LOANS INC
* Mortgagee - ROCKET MORTGAGE LLC
* Customer - SIMPLIFILE LC E-RECORDING
* **FEES**
   RECORDING FEES            $71.75
   TOTAL PAID               $71.75

| Bucks County UPI Certification On February 16, 2023 By TF |
| --- |

**This is a certification page**

# DO NOT DETACH

**This page is now part**
**of this legal document.**

**RETURN DOCUMENT TO:**
**ROCKET MORTGAGE LLC- CLIENT SOLUTIONS**
**1050 WOODWARD AVE**
**DETROIT, MI 48226-3573**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Daniel J. McPhillips

**Daniel J. McPhillips**
**Recorder of Deeds**

* - **Information denoted by an asterisk may change during**
   **the verification process and may not be reflected on this page.**

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
███████████████          BENSALEM TWP
CERTIFIED 02/16/2023 BY TF

Parcel Number: ██████████

Premises:   2973 Camborne Ct Bensalem PA, 19020

**Recording Requested By/Return To:**

Final Docs Team

1050 Woodward Ave.

Detroit, MI 48226

**This Instrument Prepared By:**

Andrew Curd

Rocket Mortgage, LLC

1050 Woodward Ave.

Detroit, MI 48226

Tel. No.: (800) 226-6308 ext. 34780

# Assignment of Mortgage

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, as nominee for
QUICKEN LOANS INC. ,whose address is 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 its successors and assigns, does hereby grant, assign, transfer and convey, unto Rocket Mortgage, LLC, FKA Quicken Loans, LLC, a corporation

organized and existing under the laws of  the state of Michigan                    (herein "Assignee"), whose
address is 1050 Woodward Ave. Detroit, MI 48226                                                          , its successors
and assigns, all its right, title and interest in and to a certain Mortgage dated     November 29, 2018        ,
made and executed by
PATRICIA A. MORRIS AND PIETRO G GIGLIOTTI, JR., WIFE AND HUSBAND

whose address is  2973 Camborne Ct Bensalem PA, 19020
to and in favor of Mortgage Electronic Registration Systems, Inc ("MERS") as mortgagee, as nominee for
QUICKEN LOANS INC., its successors and assigns

                                                                                                                upon the
following described property situated in  BUCKS                                                    County, State
of  Pennsylvania                         :

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A
PART  HEREOF SUBJECT TO COVENANTS OF RECORD.

Tax Parcel #: ██████████

Mortgage Recorded On:  11/30/2018                    Book/Liber#:

Document Number:  2018065863                         Page#:

MIN:███████████████               MERS Phone:███████████

MERS Assignment of Mortgage
VMP ®
Wolters Kluwer Financial Services  © 2000, 2011

VMP95M (1104).00
Page 1 of 3

such Mortgage having been given to secure payment of
Two Hundred Twenty Five Thousand Eight Hundred Thirty Four Dollars and 00/100
                    ($ 225,834.00          ) (Include the Original Principal Amount) which Mortgage is of record
in Book, Volume, or Liber No.                        , at page                        (or as No.
2018065863              ) of the                              Records of
          Pennsylvania              and all rights accrued or to accrue under such Mortgage.
          BUCKS   County, State of

        TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to
the terms and conditions of the above-described Mortgage.
        IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
February 15, 2023      .

                                                    **Mortgage Electronic Registration Systems,
                                                    Inc.("MERS")** as mortgagee, as nominee for
                                                    QUICKEN LOANS INC. , its successors and assigns

_____
Witness Amanda Koss

                                                    By: _____
_____                              (Signature)
Witness  Jacob Akers

                                                    Name: Andrew Curd
_____                      Title:  Assistant Secretary of MERS
Attest

State of Michigan
County of Wayne
On 02/15/2023, before me McKenzie Palchak, a Notary Public of Michigan, personally appeared Andrew Curd,
Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, as nominee for
QUICKEN LOANS INC. personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument,
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

        WITNESS my hand and official seal.

                                                    Name: McKenzie Palchak
                                                    Title: Notary Public

MCKENZIE PALCHAK
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires January 24, 2028
Acting in the County of WAYNE

Assignment of Mortgage

Between:

Mortgage Electronic Registration Systems, Inc. ("MERS")

And QUICKEN LOANS INC.

Rocket Mortgage, LLC FKA Quicken Loans, LLC

Mail To:    Final Docs Team
            Rocket Mortgage, LLC
            1050 Woodward Ave.
            Detroit, MI
            48226

Certificate of Residence

I, Andrew Curd                          do hereby certify that ASSIGNEE'S precise residence is
1050 Woodward Ave. Detroit, MI 48226.

Witness my hand on February 15th, 2023

_____
ASSIGNEE or Agent for ASSIGNEE

MERS Assignment of Mortgage
Wolters Kluwer Financial Services © 2000, 2011

VMP95M (1104).00
Page 3 of 3

**EXHIBIT A**

File No. ████

ALL THAT CERTAIN piece or parcel of land, Situate in the Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania and described according to a Final Plan of Neshaminy Valley Village IV Portion, Sections 5, 6 and 7, revised made by Pickering, Corts and Summerson, Inc., Consulting Engineers and Surveyors, dated August 26, 1977, and last revised November 29, 1978, and recorded in and for the County of Bucks at Doylestown, Pennsylvania, in Plan Book 165, Page 15, described as follows, to wit:

BEGINNING at a point on the Southwesterly side of Wexford Road (60.00 feet wide) said point being 17.16 feet (erroneously stated as 17.15 feet in prior deed) measured from a point of curve on the Southeasterly side of Cambourne Court; thence extending from said point of beginning on the arc of a circle curving to the left having a radius of 357.76 feet the arc distance of 50.30 feet to a point of tangent; thence extending South 30 degrees, 37 minutes, 36 seconds East along the Southwesterly side of Cambourne Court 10.54 feet to a point of curve; thence extending on the arc of a circle curving to the right having a radius of 12.00 feet the arc distance of 17.74 feet to a point of reverse curve; thence extending Southwestwardly along the Northwesterly side of Springdale Drive (60.00 feet wide) on the arc of a circle curving to the left having a radius of 442.27 feet the arc distance of 133.63 feet to a point; thence extending North 04 degrees, 49 minutes, 10 seconds West 133.12 feet to a point on the Southerly side of Cambourne Court; thence extending on the arc of a circle curving to the left having a radius of 75.00 feet the arc distance of 26.95 feet to a point of tangent; thence extending North 59 degrees, 22 minutes, 24 seconds East along the Southeasterly side of Cambourne Court 40.34 feet to a point of curve; thence extending on the arc of a circle curving to the right having a radius of 12.00 feet the arc distance of 17.16 feet to the first mentioned point and place of beginning.

BEING Lot Number 116 as shown on the above mentioned Plan.

PARCEL NO. ████

BEING the same premises which Harold W. Schwarz and Lorraine E. Schwarz, his wife, Trustees of the Schwarz Trust, dated March 2, 1995, by Deed dated 12/19/2003 and recorded 12/29/2003 in the Office of the Recorder of Deeds in and for the County of Bucks in Land Record Book 3784, Page 152, granted and conveyed unto Cynthia A. Whyte.